**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000424
15-JAN-2025
08:17 AM
Dkt. 67 SO**

NO. CAAP-24-0000424

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF J.F.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 22-00029)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Nakasone, JJ.)

Mother-Appellant (**Mother**) appeals from the May 30, 2024 Order Terminating Parental Rights (**Termination Order**) entered by the Family Court of the First Circuit (**Family Court**).[1]  The Termination Order terminated Mother's parental rights to J.F. (**Child**), who was born in 2016.

Mother appears to raise three points of error on appeal, contending that:  (1) Petitioner-Appellee Department of Human Services (**DHS**) failed to make reasonable efforts to reunify Mother with Child, particularly in the first year of foster custody; (2) DHS's December 19, 2023 initial permanent plan (the **Permanent Plan**) does not comport with statutory requirements; and

---

[1]	The Honorable Rebecca A. Copeland presided.

(3) the Permanent Plan is not in Child's best interests.  Mother challenges Findings of Fact (**FOFs**) 109, 111, 112, 114, 124, 128, and 129, and Conclusions of Law (**COLs**) 29 and 30, which are set forth in the Family Court's July 15, 2024 [FOFs] and [COLs].[2]

---

[2]     The challenged FOFs are as follows:

> 109.  Under the circumstances presented by the case, Mother was given every reasonable opportunity to effect positive changes to provide a safe family home and to reunify with the Child.

> . . . .

> 111.  Mother and Father are not presently willing and able to provide the Child with a safe family home, even with the assistance of a service plan.

> 112.  It is not reasonably foreseeable that Mother and Father will become willing and able to provide the Child with a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two years from the Child's date of entry into foster care.

> . . . .

> 114.  Mother lacks the insight necessary to consistently address her own safety issues.

> . . . .

> 124.  Adoption is in the best interest of this Child because the Child deserves to be in a safe and stable home, and deserves permanency.

> . . . .

> 128.  Under the circumstances presented by this case, the DHS has exerted reasonable and active efforts to reunify Father and Mother with the Child by identifying necessary, appropriate, and reasonable services to address the identified safety issues/problems, and by making appropriate and timely referrals for these services.  Any delays in the delivery of services were due to Father's and Mother's conduct.

> 129.  Under the circumstances presented in this case, the DHS treated Father and Mother fairly and serviced the entire family intensely since the start of the instant DHS and [Family Court] intervention with this family.

> The challenged COLs are as follows:

> 29.  The permanent plan goal of adoption is presumed to be in the Child's best interests.  HRS § 587A-32(b)(1).

> 30.  The Permanent Plan, dated December 19, 2023, with
> (continued...)

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's points of error as follows:

(1)  Mother argues that DHS did not provide her with a reasonable opportunity to reunite with Child because DHS "did not deny that its prior social worker did not do his job for one year" and Mother was unsupported by DHS in providing services for reunification.  This argument is refuted by the Family Court's unchallenged FOFs including, *inter alia*:

> 87.  Mother is the perpetrator of harm by the threat of abuse and threatened neglect through her untreated substance abuse and mental health problems which prevent her from being able to provide a safe family home for the Child.
>
> . . . .
>
> 103.  <u>Mother's testimony that during the first year of the case her assigned social worker did not "function," did not contact her, and did not communicate with her is not supported by the factual record and exhibits, and is not credible</u>.
>
> 104.  <u>Mother's testimony that she was not given a service plan prior to the case being assigned to [DHS social worker] is also not supported by the factual record and exhibits, and is not credible</u>.
>
> . . . .
>
> 106.  Mother has not fully participated in and completed services to give her the skills to provide a safe family home for the Child.  Even though she completed part of the services such as parenting education, she has not demonstrated that she has made the necessary internal changes and acquired the skills to provide a safe home for the Child.
>
> 107.  While Mother believed she should have been afforded more time, the Court finds she had more than sufficient time to show she could provide a safe family home but she failed to do so.
>
> . . . .

---

[2](...continued)
the permanency goal of adoption, is in the best interests of the Child.

115. Despite being given repeated opportunities to cooperate with the DHS, Mother failed to complete the services recommended by the DHS in this case and failed to demonstrate her ability to provide a safe family home for the Child with the assistance of a service plan.

116. Under the circumstances presented in this case, the DHS treated Mother fairly since the start of the DHS and Court intervention with this family.

117. The DHS actively encouraged Mother to participate in necessary and reasonable services to allow her to reunify with the Child.

118. None of the underlying facts and data upon which the DHS based its opinions, assessments, and recommendations were shown to be unreliable or untrustworthy. The DHS' continuing assessments in this case were conducted in an appropriate manner.

119. Each of the Family Service Plans offered by the DHS and ordered by the Court were fair, appropriate, and comprehensive.

. . . .

126. Under the circumstances presented in this case, the DHS made reasonable efforts to prevent or eliminate the need to remove the Child from the family home.

127. Each of the service plans offered by the DHS and ordered by the court were fair, appropriate, and comprehensive.

. . . .

132. The expert testimony of the DHS Child Welfare Services worker . . . testifying on behalf of the DHS, is credible.

. . . .

135. The testimony of Mother, unless otherwise stated, is not credible. Even if credible, the court gives no or minimal weight to her testimony, unless otherwise stated.

(Emphasis added).

Based upon the unchallenged FOFs, we conclude that the Family Court did not clearly err in finding and concluding that DHS made reasonable efforts to reunify Mother and Child, and that Mother was not willing and able to provide a safe family home, even with the assistance of a service plan, now or within a reasonable period of time not to exceed two years from Child's

April 5, 2022 date of entry into foster care.  See HRS § 587A-33(a)-(b) (2018); In re J.M., 150 Hawaiʻi 125, 137, 497 P.3d 140, 152 (2021) ("Unchallenged findings of fact are binding on appeal." (citation omitted)); In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) ("[A]n appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." (citation omitted)); In re A.K., CAAP-21-0000455, 2022 WL 1134991, at *3 (Haw. App. Apr. 18, 2022) (SDO) ("Two years is the maximum, not minimum, amount of time within which a parent must become willing and able to provide a safe family home." (Citation omitted)).

(2)  It appears that Mother argues that the Permanent Plan adopted by the Family Court does not comply with the Child Protective Act because the Family Court did not consider a permanency goal of guardianship, the Permanent Plan does not identify the proposed adoptive parents, the Permanent Plan does not provide sufficient information regarding the current resource caregiver, and the Permanent Plan does not establish a reasonable time period for adoption.

Mother does not indicate where in the record these arguments were raised and preserved for appeal.  Upon review of, *inter alia*, the transcript of the May 23, 2024 trial on the issue of terminating Mother's parental rights, it does not appear that Mother raised these arguments regarding the Permanent Plan. Therefore, these arguments as to the Permanent Plan are waived on appeal.  See SC v. JC, 151 Hawaiʻi 153, 165, 509 P.3d 1116, 1128

(App. 2022) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]").

We conclude that even if they were not waived, these arguments are without merit. Hawaii Revised Statutes (**HRS**) § 587A-32(a) (2018) provides:

> **§ 587A-32  Permanent Plan**.  (a) The permanent plan shall:
>
> (1)  State whether the permanency goal for the child will be achieved through adoption, legal guardianship, or permanent custody;
>
> (2)  Establish a reasonable period of time by which the adoption or legal guardianship shall be finalized;
>
> (3)  Document:
>
> > (A)  **A compelling reason why legal guardianship or permanent custody is in the child's best interests <u>if</u> adoption is not the goal**; or
> >
> > (B)  A compelling reason why permanent custody is in the child's best interests if adoption or legal guardianship is not the goal;
>
> (4)  Establish other related goals, including those pertaining to the stability of the child's placement; education; health; therapy; counseling; relationship with the child's birth family, including visits, if any; cultural connections; and preparation for independent living;
>
> (5)  If a child has reached the age of fourteen, describe the services needed to assist the child with the transition from foster care to independent living; and
>
> (6)  Describe the methods for achieving the goals and objectives set forth in paragraphs (4) and (5).

(Emphasis added).

HRS § 587A-30 (2018) similarly states, *inter alia*, that if a child is not expected to return to a safe family home, the child's permanent placement out of the family home shall be "in the following order of preference:  (i) Adoption; (ii) Legal

6

guardianship; or (iii) Other permanent out-of-home placement[.]" HRS § 587A-30(b)(5)(B).

Thus, Hawaii's Child Protective Act requires a compelling reason when a permanent plan states a goal of legal guardianship or permanent custody over adoption, not the other way around. Here, Mother argues that the Permanent Plan was faulty because it should have stated why guardianship should not be the goal for Child, but she fails to argue or identify evidence supporting a conclusion that guardianship was in Child's best interests. Moreover, there was ample clear and convincing evidence in the record concerning, *inter alia*, unresolved substance abuse and mental health problems, which supported a conclusion that Mother was unable to provide a safe family home, or would not become able to do so within a reasonable period, and therefore the permanent plan of adoption was in Child's best interests.

Mother appears to argue that, in the Permanent Plan, DHS must unambiguously identify who DHS believes should adopt Child. It further appears, however, that Mother recognizes that this is not a requirement stated in the Child Protective Act or any case law thereon. Mother contends that approval of the Permanent Plan of adoption without the identification of the proposed placement was not in Child's best interest because Mother would be denied an opportunity to present evidence that a particular proposed placement was not in Child's best interests. However, the plain language of HRS § 587A-32 requires only that the Permanent Plan state "<u>whether</u> the permanency goal for the

child will be achieved through adoption, legal guardianship, or permanent custody," (emphasis added), and nothing in the statutory language supports a conclusion that it must also identify a specific permanent placement concurrent with a termination hearing.

With respect to the issues raised concerning the current resource caregiver, it appears that Mother's arguments primarily pertain to a prior resource caregiver. It appears that testimony from both the guardian *ad litem* and DHS demonstrate that the current resource caregiver provided Child with, *inter alia*, stability and needed support; no concerns were identified to the Family Court concerning the current resource caregiver.

Finally, Mother argues that the Permanent Plan does not establish a reasonable time period for adoption. In the Permanent Plan, DHS targeted January of 2024 as the goal for termination and April of 2024 as the goal for placement for adoption – a three month period. The actual dates shifted forward because the January 2024 trial on termination was continued to March, the March 2024 hearing was continued to May (due to Mother's absence and default), and after the conclusion of the May 2024 trial, a September 2024 date was set for a permanency hearing. Mother fails to explain why under the circumstances of this case, this time frame is not a reasonable period to finalize Child's adoption, as required by HRS § 587A-32(a). HRS § 587A-32(a)(2) requires that a permanent plan establish a reasonable period of time for the adoption or guardianship to be finalized, but does not mandate specific

8

parameters for determining the reasonable time. In this case, it appears that the proposed adoption was to be finalized within four months after a May 23, 2024 trial on the termination of parental rights. The September 2024 date allowed time for DHS to make a final decision regarding the adoption and complete various requirements and documentation before the first post-termination permanency hearing required under HRS § 587A-31(a) (2018). Accordingly, we conclude that Mother's arguments are without merit.

(3) Finally, Mother argues that the Permanent Plan is not in Child's best interests. However, it appears that this argument is based upon Mother's other assertions, discussed above. We have carefully reviewed each of Mother's related challenges to specific FOFs and COLs, and we conclude that the Family Court did not clearly err in the challenged FOFs, and the challenged COLs are not wrong.

For these reasons, the Family Court's May 30, 2024 Termination Order is affirmed.

DATED: Honolulu, Hawaiʻi, January 15, 2025.

On the briefs:                          /s/ Katherine G. Leonard
                                        Acting Chief Judge
Herbert Y. Hamada,
for Mother-Appellant.                   /s/ Clyde J. Wadsworth
                                        Associate Judge
Kurt J. Shimamoto,
Julio C. Herrera,                       /s/ Karen T. Nakasone
Erin K.S. Torres,                       Associate Judge
Abigail D. Apana,
Deputy Attorneys General,
Department of the Attorney General,
for Petitioner-Appellee.